# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.M.**

**No. 18-0352** (Kanawha County 17-JA-454)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.W., by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's May 16, 2018, order terminating her parental rights to R.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period, denying her post-termination visitation with the child, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 23, 2017, the DHHR filed an abuse and neglect petition alleging that the child was abused and neglected due to petitioner's substance abuse issues and domestic violence between petitioner and the child's father. The DHHR also alleged that petitioner and the father did not provide anything for the child and "rel[ied] on family members to get the baby everything." Further, the DHHR asserted that the father threw things at petitioner while she was holding the child and that both parents abused methamphetamine and marijuana in the home. During an interview with a Child Protective Services ("CPS") worker, the father admitted that he and petitioner got into altercations, that he threw a flashlight at her while she was holding the baby, and that petitioner used methamphetamine. Petitioner filed a domestic violence petition against the father, but when questioned by the CPS worker, petitioner told her that she only filed the domestic violence petition because her family insisted and that she wanted to work things out with the father. Petitioner admitted to using methamphetamine; she first said she used the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

substance a few weeks prior to questioning by the CPS worker, but then altered her admission and said she last used methamphetamine six months prior. Petitioner waived her preliminary hearing. The circuit court granted her supervised visitation with the child pending clean drug screens. The circuit court ordered services, including adult life skills and parenting classes, random drug screens, and domestic violence counseling. The DHHR provided petitioner bus passes so that she would have transportation to the services.

On December 8, 2017, the circuit court held an adjudicatory hearing during which petitioner stipulated to the allegations of abuse and neglect. Petitioner was adjudicated as an abusing parent and granted a post-adjudicatory improvement period. She was ordered to participate in parenting education; submit to random drug screens; participate in a parenting and psychological evaluation and follow the resulting recommendations; participate in domestic violence counseling; and participate in supervised visitation with the child, contingent upon compliance with random drug screens and negative screen results.

The report from petitioner's psychological evaluation stated that petitioner "sees little need for change in her behavior." During her clinical interview, petitioner denied ever using alcohol or drugs, despite admitting methamphetamine use to the CPS worker. The evaluator determined that petitioner's substance abuse and denial of the same, willingness to continue to expose her son to domestic violence, and failure to accept responsibility for the abuse and neglect suffered by the child were significant problems that could prevent petitioner from becoming a minimally adequate parent.

In February of 2018, the circuit court held a review hearing. Prior to the hearing, the guardian informed the circuit court that petitioner had been harassing the child's great-aunt, with whom the child was placed. Based upon this information, the circuit court granted the DHHR and the guardian discretion to stop petitioner's visitation with the child and ordered the child be removed from his great-aunt's home and placed in foster care. During the review hearing, the DHHR reported that petitioner was not complying with her post-adjudicatory improvement period due to continuing domestic violence and failure to comply with services. According to the DHHR, petitioner and the child's father engaged in at least two incidents of domestic violence since the proceedings began. The DHHR and the guardian jointly moved for the termination of petitioner's post-adjudicatory improvement period, which the circuit court granted. However, the circuit court ordered that petitioner continue to participate in services. The circuit court ordered that petitioner have no direct or indirect contact with the child's father.

On May 8, 2018, the circuit court held a dispositional hearing. Petitioner moved for a post-dispositional improvement period, which the circuit court ultimately denied. The DHHR presented evidence that petitioner was not employed, was living with her grandmother, and was compliant with services. However, she continued to have contact with the father, despite being ordered not to do so. The DHHR also presented evidence that petitioner created or attempted to create fraudulent telephone records to try to show that she had not been in contact with the father. According to the DHHR, petitioner's relationship with the father served as a barrier to making improvements during the proceedings. Both the DHHR and the guardian recommended terminating petitioner's parental rights. The circuit court found that petitioner failed to comply with circuit court orders that forbid her to have contact with the child's father. It also found that

petitioner and the father attempted to commit fraud upon the circuit court in an attempt to continue to have contact in violation of the circuit court's order. The circuit court further found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its May 16, 2018, dispositional order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. In support, petitioner argues that she complied with services and could have benefitted from further services. We find petitioner's argument to be meritless. West Virginia Code § 49-4-610(3)(D) provides that when a parent has previously been granted an improvement period, the parent must prove that "since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement." Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015).

While petitioner did comply with services during her post-adjudicatory improvement period, she did not benefit from them. The record shows that petitioner was unable to make improvements due to her continued contact with the father. Petitioner and the father continued to have contact, despite circuit court orders not to, and continued to engage in domestic violence during the proceedings. Petitioner went so far as to attempt to provide the circuit court with fraudulent telephone records in an effort to hide her communications with the father. Further,

---

[2]The father's parental rights were also terminated below. The permanency plan for the child is adoption in his current foster placement.

3

petitioner does not provide any evidence of a change in her circumstances that would demonstrate that she would be likely to participate in a post-dispositional improvement period and, therefore, she did not meet the applicable burden to receive one. As such, we find no error.

Next, petitioner argues that the circuit court erred in denying her post-termination visitation with the child. In support, she asserts that, because she became a mother when she was eighteen years old, she needs "more instruction and intervention than the average person, pursuant to her forensic psychological evaluation." Further, she argues that she complied with services during the proceedings, that visits went well, and that she has a bond with the child. We do not find petitioner's argument persuasive. We have held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002).

Here, petitioner failed to accept responsibility for the abuse and neglect suffered by the child as a result of the domestic violence between her and the father. Petitioner chose her own interests over the child's interests when she attempted to provide the circuit court with fraudulent information regarding her communications with the father. Due to the continued contact and domestic violence during the proceedings, post-termination visitation was clearly not in the child's best interests. Further, while petitioner argues that she and the child share a bond, there is no evidence to support this assertion. Additionally, the child is less than two years old and unable to express his wishes regarding his desire for continued visitation with petitioner. Therefore, the circuit court did not err in denying post-termination visitation.

Finally, petitioner argues that the circuit court erred in terminating her parental rights. Again, petitioner asserts that she could have benefitted from additional services and instructions and argues that the circuit court should have utilized a less-restrictive dispositional alternative. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) clearly indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Petitioner was not entitled to further services because she was not compliant with circuit court orders regarding communication with the father. Petitioner continued to communicate with

4

the father, see him, and engage in domestic violence with him during the proceedings. Petitioner chose her relationship with the father over the child repeatedly throughout the proceedings. Further, the termination of petitioner's parental rights was in the child's best interests. We have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl.Pt.4. In February of 2018, when the child was less than two years old, he was removed from his initial placement with his great-aunt, due to harassment by petitioner and her grandmother, and subsequently placed in a foster home. Because of his young age and the unlikelihood of improvement by petitioner, termination of petitioner's parental rights was necessary in order for the child to achieve permanency in his foster home. Therefore, the circuit court did not err in finding no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the termination of petitioner's parental rights was in the child's best interests.

Moreover, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, the termination of petitioner's parental rights was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 16, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment